UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEON C. STAFFORD, SR., <br><br> Plaintiff <br><br> v. <br><br> CHRISTOPHER STEVENS, *et al.*, <br><br> Defendants. | CIVIL ACTION NO. 3:25-CV-00028 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Deon C. Stafford has filed a complaint alleging that seven defendants failed to protect him from harm when he was transported to a state prison after a parole violation. Because the complaint states potential claims for relief against two John Doe defendants, the Court will permit Stafford to request discovery from an alleged supervisor to ascertain those defendants' identities and allow 90 days in which to file an amended complaint.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On December 3, 2024, Stafford filed this complaint (Doc. 1-1) in the Eastern District of Pennsylvania. On February 24, 2025, the court issued a memorandum order finding that venue was improper in the Eastern District and directing that the case be transferred to this district. *See* (Doc. 3).

Stafford's complaint alleges as follows: On February 9, 2024, two parole officers from Dauphin County, named as John Doe defendants, escorted him to SCI-Smithfield by car. During the journey, the escorting officers received a call from two supervisors, "Tien Ho" and "Geedy," directing them to drive to a housing project to arrest a "barr[i]caded fugitive." The escorting officers were joined by officers from "Mount Union State Parole" and proceeded to

the housing project. Stafford's account of what happened at the housing project is unclear, but he claims that officers and the fugitive drew weapons. Several officers positioned themselves near the car with Stafford still in it, placing Stafford "in the line of fire." He yelled to a Mount Union officer for help, but the officer allegedly said: "Learn to duck." He also called to the Dauphin County officers, but they ignored him. 20 minutes later, state police arrived and directed that Stafford be removed from the car. Stafford was removed without any bulletproof vest or other protection. Upon arrival at SCI-Smithfield, he tried to file a grievance about the incident but was rejected and told to "write [the] parole office." He then served his grievance on Geedy, Ho, and "Director of State Parole Field Agents" Christopher Stevens, but received no response.

Stafford does not clearly allege whether any weapons were fired nor that he sustained any physical injury. He alleges that he suffered a "mental breakdown & panic[] attack," and now suffers from "paranoia" because onlookers took his picture and someone misidentified him on Facebook as a "parole informant." He asserts an equal protection claim based on the right to be "as safe as other inmates in custody," a violation of his right of access to the courts based on various defendants' failure to respond to his grievances, a claim of cruel and unusual punishment, and a claim under the Americans with Disabilities Act, and seeks compensatory and punitive damages.

## II. 28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim

upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can

4

prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III.    DISCUSSION**

Several of Stafford's legal claims have no apparent application to the facts alleged. He asserts an equal protection claim because he was made less safe than "other inmates in custody," but does not allege that these unidentified inmates were similarly situated to him. *See Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). He asserts a denial of access to the courts based on defendants' failure to respond to grievances, but a prisoner has no constitutional right to a grievance process, nor are mishandled grievances equivalent to a denial of access to the courts. *See Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007); *Lewis v. Casey*, 518 U.S. 343, 346 (1996). He asserts a claim under the Americans with Disabilities Act, but does not allege that he is disabled or has been denied access to any program, service, or activity on that basis. *See Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023).

As pled, Stafford's only viable legal theory is an Eighth Amendment claim premised on officers' failure to protect him from harm. To state a claim, Stafford must allege facts showing that the defendants ignored an objectively serious risk to him and were subjectively aware of that risk. *See Dongarra v. Smith*, 27 F.4th 174, 179 (3d Cir. 2022). However, the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . ." 42 U.S.C. § 1997e(e); *see*

*Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003). Here, although Stafford alleges that weapons were involved, there is no allegation that he was physically injured during the confrontation. He states that he suffered a "mental breakdown & panic[] attack," and that his medication to treat his anxiety and depression has "increased." These allegations do not themselves suggest physical injury[1], so any claim for compensatory damages would not be viable as pled.

Further, while Stafford alleges in conclusory fashion that all defendants "had knowledge that he was being placed in a dangerous situation," he has not pled facts showing that any of the four identified defendants knowingly placed him at risk. Stevens and State Parole Supervisor Lisa Moser are not mentioned in the body of the complaint, and their supervisory roles, and/or failure to respond to grievances, are insufficient to infer personal involvement.[2] *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Geedy and Ho allegedly told the John Doe officers to apprehend the fugitive, but the complaint does not indicate that Geedy or Ho knew the confrontation with the fugitive was likely to be violent, that they knew Stafford was in the car, or if they did, that they directed the officers to conduct the operation in a manner that would expose Stafford to a serious risk of harm.

---

[1] *See, e.g., Michtavi v. United States*, 345 F. App'x 727, 730 n.3 (3d Cir. 2009) ("Although Michtavi alleged that his mental injuries require medication . . . the need to take medication does not necessarily lead to the conclusion that the injuries are physical in nature."); *Dennis v. Smith*, No. 3:20-CV-00017-LPL, 2021 WL 2077651, at *10 (W.D. Pa. Feb. 4, 2021) (although the defendants' actions caused "extreme terror, panic, and anxiety . . . [the plaintiff] does not allege that he was attacked or physically injured in any way"), report and recommendation adopted, 2021 WL 2075451 (W.D. Pa. May 24, 2021); *Hubert v. Wetzel*, No. 18-CV-354, 2018 WL 4828470, at *6 (W.D. Pa. Oct. 4, 2018) ("emotional injuries with subsequent physical sequela" are insufficient for PLRA purposes).

[2] Any claim against the defendant named as "Mount Union State Parole Supervisor John Doe" fails for the same reason.

The complaint potentially states a claim for nominal or punitive damages only[3] against two John Doe defendants: the Dauphin County officers assigned to transport Stafford to SCI-Smithfield who allegedly ignored his pleas for help during the confrontation. "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009). However, the complaint lacks sufficient identifying information to serve the defendants. Therefore, the Court will direct service of the complaint on Stevens, the "Director of State Parole Field Agents," for the limited purpose of identifying these John Doe defendants through discovery. *See*, *e.g.*, *Murray v. Ohio Dep't of Corr.*, No. 1:14-CV-168, 2014 WL 1382401, at *4 (S.D. Ohio Apr. 8, 2014) ("Under the circumstances of this case, it is appropriate to permit service of the complaint on a high-ranking official who could identify the John Doe defendants . . ."); *Mosby v. Doe*, No. 08-CV-677-SLC, 2009 WL 192502, at *1 (W.D. Wis. Jan. 27, 2009).

### IV. CONCLUSION

The Court will grant Stafford's motion to proceed *in forma pauperis* (Doc. 18) and permit him 90 days in which to seek discovery from Stevens regarding the identities of the "John Doe" defendants and file an amended complaint. An appropriate order follows.

Dated: May 14, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[3] Even without a physical injury, "the PLRA does not limit a prisoner's ability to obtain nominal or punitive damages." *See Prillerman v. Fromhold*, 714 F. App'x 184, 186 (3d Cir. 2017).

7